**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1093

PRISCILLA EVERETTE-OATES,

Plaintiff – Appellant,

and

DUARTHUR OATES,

Plaintiff,

v.

SBI AGENT LOLITA CHAPMAN, in her individual capacity; BETH WOOD, in her individual capacity; T. VANCE HOLLOMAN, in his individual capacity; ROBIN HAMMOND, in her individual capacity; SHARON EDMUNDSON, in her individual capacity,

Defendants – Appellees,

and

NORTH CAROLINA DEPARTMENT OF STATE TREASURER; NORTH CAROLINA STATE BUREAU OF INVESTIGATIONS; GREGORY MCLEOD, Director, North Carolina State Bureau of Investigation, in his individual capacity and in his official capacity; GWENDOLYN KNIGHT, in her individual capacity and in her official capacity; ANN HOWELL, in her individual capacity and in her official capacity; NORTH CAROLINA LOCAL GOVERNMENT COMMISSION; NORTH CAROLINA STATE AUDITOR; DOES 1-100; BARRY LONG,

Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:16-cv-00623-FL)

Argued: January 27, 2021                    Decided: July 22, 2021

Amended: July 22, 2021

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

**ARGUED:** Charles Adams Bonner, LAW OFFICES OF BONNER & BONNER, Sausalito, California; Stephen Bergstein, II, BERGSTEIN & ULLRICH, LLP, New Paltz, New York, for Appellant. Brian David Rabinovitz, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Cabral Bonner, LAW OFFICES OF BONNER & BONNER, Sausalito, California, for Appellant. Joshua H. Stein, Attorney General, Daniel Snipes Johnson, Special Deputy Attorney General, Amar Majmundar, Senior Deputy Attorney General, Jeremy D. Lindsley, Assistant Attorney General, Bryan Nichols, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

While she was the mayor of Princeville, North Carolina, Priscilla Everette-Oates was investigated and then indicted for embezzling town funds through misuse of her town credit card. Prosecutors dismissed the case against her after new evidence was discovered, and Everette-Oates filed a multi-count § 1983 claim against various state officials involved in her prosecution.

The district court allowed to proceed the two claims that are before us now on appeal: a Fourth Amendment claim against state investigator Lolita Chapman, alleging that she fabricated and concealed evidence in her testimony before the grand jury; and a conspiracy claim against Chapman and several other officials for their alleged roles in causing the presentation of false grand jury testimony. After discovery, the district court granted summary judgment to the defendants, largely on the ground that Chapman is absolutely immune from claims arising from her grand jury testimony. We now affirm the judgment of the district court.

## I.

## A.

In 2012, Priscilla Everette-Oates was serving her second term as mayor of Princeville, North Carolina, a historically Black town. Princeville had been struggling financially for many years, in part because of a history of hurricanes and severe flooding. Conditions further declined during Everette-Oates's time in office, and an independent audit of the town's finances for the 2011 fiscal year raised concerns. As a result, the Local

3

Government Commission ("LGC"), a state entity that monitors the fiscal and accounting practices of local governments, voted in July of 2012 to assume control of Princeville's finances, stepping in to oversee and manage the town's day-to-day financial operations.

The LGC's first act was to impound the town's financial records, removing them from town control and transporting them to the LGC office in Raleigh. Sharon Edmundson, appointed by the LGC as finance officer for Princeville, was responsible for those records, which remained in the LGC's sole custody during the period in which Everette-Oates was investigated and indicted.

On September 19, 2012, Edmundson sent a letter to Everette-Oates and Princeville's Town Commissioners detailing the LGC's concerns about charges made to Everette-Oates's town credit card. According to Edmundson, many of those charges were improperly supported, either because they lacked documentation in the form of receipts or because it was not clear that they related to legitimate town business. Included in the second category was a series of charges connected to an "Economic Development Committee" that had not been adequately described or verified, in the view of the LGC. Edmundson attached to her letter a spreadsheet listing the charges of concern, which would become the basis for Everette-Oates's indictment.

At the same time, the Office of the State Auditor began an audit of Everette-Oates's use of town funds, and in April of 2013, it issued a finding that Everette-Oates and other town officials had used town credit cards for questionable expenditures and failed to document certain reimbursements. At that point, the county District Attorney opened a criminal investigation. Agent Lolita Chapman, a financial crimes agent with the State

4

Bureau of Investigations – and the key defendant in the present case – was assigned as the sole investigator.[1]

Agent Chapman focused her investigation of Everette-Oates on two main issues, tracking the concerns first identified by Edmundson and her spreadsheet. First, for charges without receipts, Chapman evaluated whether appropriate business purposes could be identified. And second, for charges for which Everette-Oates had cited the Economic Development Committee as the approved business purpose, Chapman investigated whether there in fact existed such a committee, authorized as part of town business. That investigation yielded conflicting information and evidence, some supporting the existence of an approved Economic Development Committee and some to the contrary. It is undisputed that Chapman provided her full investigative file, including this competing evidence, to the District Attorney's Office.

The District Attorney charged Everette-Oates with 17 felony counts of embezzlement by a public official. Tonya Montanye, the lead prosecutor, used Edmundson's original spreadsheet in drafting an indictment. As she later testified,

---

[1] The district court described Chapman's assignment to the case: In an email, a state official requested that "an African American agent" be named because of racial sensitivities that might accompany a financial investigation of a historically Black town. Assignment of an "African American agent would be preferable in terms of relieving any anxiety on the part of Princeville's citizenry in this regard." *See Everette-Oates v. N.C. Dep't of State Treasurer* (*Everette-Oates II*), No. 5:16-CV-623-FL, 2017 WL 2269524, at *4 (E.D.N.C. May 23, 2017) (quoting J.A. 3634). Chapman, a Black woman, was assigned the next day. *Id.* at *5.

however, she focused not on missing receipts, but instead on purchases that lacked a sufficient business justification, with or without receipts – and in particular, on charges listing the Economic Development Committee as a justification, given her understanding that no such Committee existed. Montanye reviewed the proposed indictment with Chapman, and according to Everette-Oates, Chapman affirmed Montanye's belief about the non-existence of the purported Economic Development Committee.

On August 5, 2013, Everette-Oates was indicted by a grand jury on all 17 counts of the indictment against her. Agent Chapman was the only witness to testify before the grand jury. Shortly after, Everette-Oates was arrested and then released on bond.

Because the LGC still held Princeville's financial documents, Everette-Oates's defense counsel sent the LGC a subpoena and a public records request seeking all relevant records, including receipts. The LGC failed to fully comply with repeated production requests – from both Everette-Oates and the prosecutors – and moved to quash the subpoenas. The court denied the motion to quash and, in September 2014, ordered that both defense counsel and the prosecution be permitted an on-site inspection of the records held at the LGC's office.

That two-day inspection revealed a storage closet filled with Princeville financial documents – many more documents than the LGC had suggested it possessed – as well as additional records kept by Edmundson in her office, disclosed only on the second day. The lawyers discovered two files particularly relevant here: first, a folder labeled "Economic Development Committee," containing documents related to Princeville's economic development efforts; and second, in Edmundson's office, an envelope labeled "Appears to

6

be receipts from . . . the mayor," containing receipts for Everette-Oates's credit card expenditures, each accompanied by a hand-written explanation. None of those receipts or documents had previously been disclosed to Everette-Oates or to prosecutors.

In March 2015, Montanye recommended to the District Attorney that the charges against Everette-Oates be dismissed, citing both evidentiary issues and credibility concerns with certain witnesses. The indictment was dismissed on March 18, 2015.

**B.**

After the indictment against her was dismissed, Everette-Oates filed a multi-count complaint under 42 U.S.C. § 1983, naming as defendants several state agencies and actors who, she alleges, violated her constitutional rights, or conspired to do so, during the lead-up to her indictment and her short-lived prosecution. The claims relevant on appeal center around Agent Chapman's testimony before the grand jury. Everette-Oates alleges that Chapman testified falsely regarding the Economic Development Committee, both omitting evidence of its existence and fabricating evidence that it did not exist. She also alleges that four other defendant officials – Edmundson, appointed as Princeville's finance officer; LGC officers Vance Holloman and Robin Hammond; and State Auditor Beth Wood – conspired with Chapman to present that false grand jury testimony.

Everette-Oates's original complaint raised several other claims, but those claims are not before us on appeal. In two initial decisions, the district court substantially narrowed the grounds on which Everette-Oates could proceed, dismissing multiple counts of her complaint for failure to state a claim. *See Everette-Oates v. N.C. Dep't of State Treasurer* (*Everette-Oates I*), No. 5:16-CV-623-FL, 2016 WL 10805746, at *18 (E.D.N.C. Sept. 28,

7

2016); *Everette-Oates v. N.C. Dep't of State Treasurer (Everette-Oates II)*, No. 5:16-CV-623-FL, 2017 WL 2269524, at *14 (E.D.N.C. May 23, 2017).[2] In some instances, the court dismissed claims because Everette-Oates had not alleged with specificity the conduct of which she complained or the involvement of the named defendants in that conduct. *See, e.g.*, *Everette-Oates II*, 2017 WL 2269524, at *11–12.

The district court reached a different result, however, with respect to Chapman's grand jury testimony, concluding that Everette-Oates had pleaded facts sufficient to state a Fourth Amendment claim that Chapman concealed or fabricated material evidence before the grand jury. *Id.* at *10–11. That claim could not proceed, the district court reasoned, under the rubric of malicious prosecution: The elements of malicious prosecution include a "seizure of the plaintiff pursuant to legal process unsupported by probable cause," *id.* at *9 (quoting *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)), and in the court's view, the indictment of Everette-Oates "conclusively determine[d] the existence of probable cause," *id.* at *10. But Everette-Oates could go forward on a Fourth Amendment claim for concealment and fabrication of evidence, because she had alleged facts from which it could be inferred that Chapman "deliberately or with a reckless disregard for the truth," *id.*

---

[2] In its first order, the district court dismissed Everette-Oates's claims without prejudice, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Everette-Oates I*, 2016 WL 10805746, at *18. In its second order, the district court allowed Everette-Oates to proceed on some of the claims included in her proposed amended complaint, but denied leave to amend with respect to other claims; as to those claims, the district court reasoned, amendment would be futile because they could not survive dismissal under Rule 12(b)(6). *Everette-Oates II*, 2017 WL 2269524, at *14. Among the claims dismissed at this early stage of the proceedings were state law claims and claims under federal statutes other than § 1983. Everette-Oates has not challenged those dismissals on appeal.

(quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)), misled the grand jury about a matter – the existence of the Economic Development Committee – "material to the probable cause determination for the charged offense of embezzlement," *id.* at *11. And as to the other four defendants listed above, Everette-Oates had adequately pled a § 1983 conspiracy to violate her Fourth Amendment rights by causing Chapman to testify falsely to the grand jury. *Id.* at *12.[3]

With Everette-Oates's claims so narrowed, the parties filed cross-motions for summary judgment when discovery was complete. And in the order now on appeal, the district court granted summary judgment to the defendants on all claims, denying Everette-Oates's cross-motion. *Everette-Oates v. Chapman* (*Everette-Oates III*), No. 5:16-CV-623-FL, 2020 WL 231378, at *19 (E.D.N.C. Jan. 14, 2020).

---

[3] Everette-Oates has not appealed the dismissal of her malicious prosecution claim, and the government has not cross-appealed or otherwise questioned the district court's recognition of a separate Fourth Amendment claim for falsification or concealment of evidence. We note, however, that Everette-Oates's claim may better be viewed as one for malicious prosecution. Although a grand jury indictment generally will preclude a malicious prosecution claim by establishing probable cause, there is an exception for cases in which the decision to indict is influenced by a state actor's deliberately false testimony before a grand jury, *see Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) – exactly what Everette-Oates is alleging. But any confusion here appears to be entirely semantic, as the elements of the concealment and fabrication claim recognized by the district court – deliberate or reckless false testimony that is material to a grand jury's probable cause determination, *Everette-Oates II*, 2017 WL 2269524, at *10 – perfectly track the requirements for making out a malicious prosecution claim in this context, *see id.* at *9; *Evans*, 703 F.3d at 647–48 (discussing malicious prosecution claim involving presentation to grand jury of allegedly false evidence); *Massey v. Ojaniit*, 759 F.3d 343, 356–57 (4th Cir. 2014) (same). And given that the parties have not challenged the district court's framing of this Fourth Amendment claim, we need not consider the issue further.

9

The district court began its thorough opinion with the first of Everette-Oates's remaining claims: the alleged concealment and fabrication of evidence by Chapman before the grand jury. *Id.* at *9. That claim was barred as a matter of law, the district court held, because Chapman was absolutely immune from liability with respect to her grand jury testimony. *Id.* at *10. Under *Rehberg v. Paulk*, 566 U.S. 356 (2012), the court explained, "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony" – including allegedly "false testimony" – and also from claims based on "preparatory activity" leading up to that testimony. *Everette-Oates III*, 2020 WL 231378, at *9 (quoting *Rehberg*, 566 U.S. at 369–70). And all of Everette-Oates's claims against Chapman, the court concluded, "fall squarely within [that] absolute immunity": In her amended complaint and again in her briefs, Everette-Oates focused repeatedly and exclusively on Chapman's alleged fabrication and concealment of evidence in her grand jury testimony. *Id.* at *9 (quoting complaint and briefs). Nor, the district court noted, had Everette-Oates provided any argument in response to Chapman's assertion of immunity. *Id.* at *10.

In what amounted to an alternative holding, the court went on to consider Everette-Oates's argument that some of her allegations against Chapman actually involved conduct prior to and apart from her grand jury testimony – specifically, Chapman's provision of misleading information to prosecutor Montanye regarding the existence of an Economic Development Committee. *See id.* The court concluded that even if those allegations were not covered by Chapman's *Rehberg* immunity, there was no evidence in the summary judgment record to support them. *Id.* It was undisputed, the court explained, that Chapman

10

had provided Montanye with her full investigative file, including evidence that there was in fact an Economic Development Committee, precluding any inference that "Chapman deliberately fabricated or concealed" evidence regarding the Committee. *Id.* at *12; *see also id.* at *10–12 (describing extensive evidence turned over to prosecutors). Moreover, the district court held, the information given to the prosecutors, though mixed, was sufficient to sustain a finding of probable cause against Everette-Oates, which meant that Everette-Oates could not establish a Fourth Amendment violation for concealment or fabrication of evidence. *Id.* at *12–13. And finally, the post-indictment discovery of the "Economic Development Committee" file at the LGC offices lent no support to the claim that Chapman concealed evidence from the prosecutor in the run-up to indictment: the materials in that file were similar to those already collected and turned over to prosecutors by Chapman, and the prosecutors already were on notice that the LGC possessed records Everette-Oates believed relevant to her defense. *Id.* at *14–15.

The court turned then to the last of Everette-Oates's remaining claims: her claim that Chapman and four other defendants conspired to cause Chapman to violate Everette-Oates's constitutional rights through the provision of false grand-jury testimony. *See id.* at *16–19. To establish a civil conspiracy under § 1983, the court explained, Everette-Oates would have to show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Id.* at *16 (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Here, the court held, Everette-Oates could not show an underlying "deprivation of a constitutional right," given that her Fourth Amendment claim of

11

fabrication and concealment of evidence could not survive summary judgment. *Id*. Moreover, and in the alternative, Everette-Oates had failed to present evidence that would create a genuine issue of fact as to the existence of a conspiracy – that the defendants had shared a conspiratorial objective and "positively or tacitly [come] to a mutual understanding to try to accomplish a common and unlawful plan." *Id*. at \*17 (quoting *Hinkle*, 81 F.3d at 421).

Everette-Oates timely appealed the district court's grant of summary judgment to the defendants.

## II.

We review a grant of summary judgment de novo, using the same standard applied by the district court. *Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019) (citation omitted). Courts "should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003) (citation omitted). Largely for the reasons given by the district court, we affirm the grant of summary judgment to the defendants.

Like the district court, we think that absolute immunity bars much, if not all, of Everette-Oates's Fourth Amendment claim against Chapman. Under *Rehberg*, Chapman is absolutely immune from any § 1983 claim based on her testimony. 566 U.S. at 369. And that absolute immunity is broad in scope, extending to claims that Chapman presented or conspired to present false evidence, and to claims based on Chapman's preparatory

12

activity in advance of testifying. *Id.* at 369–70. In other words, plaintiffs may not "simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Id.* at 369 (citation omitted).

As the district court concluded, Everette-Oates's claims against Chapman "fall squarely within" that absolute immunity. *Everette-Oates III*, 2020 WL 231378, at *9. It has been clear since the beginning of this case that Chapman's grand jury testimony is the gravamen of Everette-Oates's claims against her. Each iteration of Everette-Oates's complaint has focused sharply on Chapman's allegedly false or misleading testimony before the grand jury. As a result, the district court permitted claims arising from that testimony – and only those claims – to proceed past a motion to dismiss, finding that Everette-Oates had pleaded with sufficient specificity her allegation that Chapman concealed or fabricated evidence before the grand jury. *Everette-Oates II*, 2017 WL 2269524, at *10. And then again at summary judgment – after Chapman had briefed her absolute immunity defense – Everette-Oates continued to center her claim around Chapman's grand jury testimony. *See, e.g.*, Pl.'s Mem. in Opp'n to Def. Chapman's Mot. for Summ. J. at 12–13, 16, *Everette-Oates v. Chapman*, No. 5:16-cv-00623-FL (E.D.N.C. Apr. 22, 2019), ECF No. 204; Pl.'s Reply Br. in Supp. of Mot. for Summ. J. at 4–5, *Everette-Oates v. Chapman*, No. 5:16-cv-00623-FL (E.D.N.C. May 6, 2019), ECF No. 216.

On appeal, as before the district court, Everette-Oates suggests that she can advance a separate claim against Chapman, falling outside the scope of *Rehberg* immunity, based on the agent's representations to prosecutor Montanye. Like the district court, we disagree.

13

First, it is not clear that the record in this case would allow a finding that Chapman's conversations with Montanye are not themselves protected by *Rehberg*, which immunizes not only grand jury testimony itself but also a witness's conversations with prosecutors in preparation for that testimony. *See* 566 U.S. at 369–70. But in any event, as the district court thoroughly explained, the summary judgment record simply will not support any otherwise viable claim that Chapman violated the Fourth Amendment by concealing or fabricating evidence regarding the Economic Development Committee in her interactions with prosecutor Montanye.

To the extent Everette-Oates has alleged such a claim, it is that Chapman concealed from Montanye evidence supporting the existence of an Economic Development Committee, causing her to indict Everette-Oates for charges attributed to a purportedly non-existent entity.[4] But as the district court emphasized in its opinion, it is not disputed that Chapman turned over to prosecutors her entire investigative file, "set[ting] forth plainly and in the open" extensive "information and documentation" supporting the Committee's existence, as well as evidence to the contrary. *Everette-Oates III*, 2020 WL 231378, at *12. And that undisputed evidence, we agree, is inconsistent with any finding that Chapman "deliberately . . . concealed" from or "intentionally misrepresented" to prosecutors evidence regarding the status of the Economic Development Committee, *id.*, as would be required to make out a violation of the Fourth Amendment. *See Everette-*

---

[4] We can discern no allegation in Everette-Oates's complaints or briefs that Chapman presented prosecutors (as opposed to the grand jury) with fabricated evidence; this portion of her claim is limited to the concealment of allegedly exculpatory evidence.

14

*Oates II*, 2017 WL 2269524, at *10; *Durham*, 690 F.3d at 189 (addressing "deliberate[]" falsification of evidence).

Nor can Everette-Oates prevail without showing that any allegedly concealed evidence was "material" to the grand jury's probable cause determination. *See Everette-Oates II*, 2017 WL 2269524, at *10; *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (explaining that false statements or omissions violate the Fourth Amendment only if they are "material, that is, necessary to the finding of probable cause" (internal quotation marks omitted)). Here, the district court expressly found that taking account of all the admittedly conflicting evidence – including the evidence allegedly concealed by Chapman – there remained a sufficient basis for probable cause against Everette-Oates. *Everette-Oates III*, 2020 WL 231378, at *12. Everette-Oates does not challenge that finding on appeal, and we have no basis for questioning it – which means that Everette-Oates also cannot satisfy the materiality requirement of her Fourth Amendment claim.

That leaves Everette-Oates's conspiracy claim against Chapman and the other defendants. But as the district court reasoned, because Everette-Oates has failed to make out a Fourth Amendment violation, she cannot show the underlying "deprivation of a constitutional right" required to support a § 1983 conspiracy claim. *Id.* at *16 (quoting *Hinkle*, 81 F.3d at 421). Nor, as the district court held in the alternative, does the summary judgment record allow for a finding that the various defendants acted in concert with the conspiratorial objective of causing Chapman to testify falsely to the grand jury. *Id.* at *17

15

("[T]he inferences that plaintiff seeks to draw are too attenuated and speculative to create a genuine issue of fact.").[5]

## III.

For the reasons given above, we affirm the district court's grant of summary judgment to the defendants and denial of summary judgment to Everette-Oates.

*AFFIRMED*

---

[5] In discussing her conspiracy claim on appeal, Everette-Oates refers not only to a deprivation of her Fourth Amendment rights but also to a violation of her rights under the Fourteenth Amendment's Due Process Clause. We need not consider in this case whether the Due Process Clause may be violated by the involvement of state or municipal defendants in the pre-trial concealment or fabrication of evidence. *Cf. Manuel v. City of Joliet*, 137 S. Ct. 911, 917–19 (2017) (treating challenge to pre-trial restraint on liberty as arising under Fourth Amendment). The district court was clear in its preliminary ruling that Everette-Oates could proceed to summary judgment on Fourth Amendment claims, not claims under the Due Process Clause. *Everette-Oates II*, 2017 WL 2269524, at *10–11, *12. Everette-Oates did not object to that ruling before the district court, instead citing only the Fourth Amendment in her amended complaint, and she does not address or challenge it on appeal.