DAVIS, Judge.
 

 *218
 
 In this appeal, we consider whether the plaintiff's complaint stated valid claims for relief both under
 
 42 U.S.C. § 1983
 
 and North Carolina common law based on his allegations that the defendants caused him to be arrested and indicted without probable cause by concealing and fabricating evidence. Plaintiff Phillip Braswell appeals from the trial court's order granting the motions to dismiss of Brandon Medina, John W. Denton, Michael A. Whitley and the City of Rocky Mount (collectively the "Rocky Mount Defendants") and the State of North Carolina pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, we affirm in part and reverse in part.
 

 Factual and Procedural Background
 

 We have summarized-and, at times, quoted-the pertinent facts below using Plaintiff's statements from his complaint, which we treat as true in reviewing the trial court's order granting a motion to dismiss under Rule 12(b)(6).
 
 Feltman v. City of Wilson
 
 ,
 
 238 N.C. App. 246
 
 , 247,
 
 767 S.E.2d 615
 
 , 617 (2014).
 

 *219
 
 After working at a Ford dealership for 19 years, Braswell left that job to become a self-employed investor in 1997. Braswell's uncle, William Greene, subsequently loaned Plaintiff $10,000 in 1998 for investment purposes. The loan was memorialized by an agreement in which Braswell agreed to repay the loan at an interest rate of 10%. Between 1998 and 2009, this loan was extended or "rolled over" each year by agreement between Mr. Greene and Braswell. At no time was Braswell a licensed investment advisor, and he did not hold himself out to be one.
 

 Between 1998 and 2006, Mr. Greene made additional loans to Braswell.
 
 [1]
 
 Braswell's aunt, Ola Beth Greene, also lent him money during this time period.
 

 In August or September of 2009, the Greenes requested repayment of one of the loans, and Braswell responded that he "did not have the money, but he was working on it." In December of that year, Braswell explained to the Greenes that he could not repay the loans because their money had been "lost along with [Braswell's] own money in a collapse of investment markets that finance experts called a 'global financial meltdown.' "
 

 On 4 February 2010, the Greenes reported the loss of these funds-which they claimed totaled $112,500-to Officer Medina of the Rocky Mount Police Department. Officer Medina subsequently secured a search warrant for Braswell's home, which was executed on 9 February 2010. During the search, Officer Medina seized computers; thumb drives; tax returns for the years 2003 through 2008; financial statements from RBC, Bank of America, First South, Fidelity Investments, and MBNA; delinquency notices; and two blank Fidelity Investments checkbooks.
 

 These records revealed that Braswell's account with Fidelity Investments had contained over $100,000 in early 2008, but by the end of that year "the financial crisis had taken its toll on [Braswell]'s investments and the account had essentially no value." None of the records "seized from [Braswell's] home tended to show that [he] had done anything with the money he received from the Greenes other than invest it in legitimate financial institutions."
 

 Officer Medina proceeded to arrest Braswell pursuant to an arrest warrant he had obtained. After being read his
 
 Miranda
 
 rights, Braswell gave the following statement to Officer Medina:
 

 I began investing in stocks to try to make a living in late 1998. I had mentioned to my uncle, Willie Greene, that
 
 *220
 
 I could pay him higher interest than a CD so he started investing some money with me too. I took this money and invested [in] stocks
 
 *502
 
 along with my own. I did real well for a while but then things started to change. I started losing money. I began to borrow from real estate [ ] my mom owned with her permission to recoup my losses.... Eventually I had lost my money along with my mom's and my uncle's and aunt's. In May 2008, I had an accident [from] which I was expecting a settlement. I haven't received the settlement yet, but between that [and] work I was expecting to make some or all of what I ... owed my uncle and aunt. They had been rolling over their investments with me and I thought I would have several years to come up with the money. In September 2009, Willie said that he wanted to cash in one of his investments. I asked him to wait a while and I was going to try to come up with money but didn't. My aunt asked me on December 8, 2009 about their investments and I told them that I had lost their money. I had taken my money that I borrowed from my mom's property and some other money she had to try to invest to rectify the situation. But sadly it went from bad to worse when I had lost that too.
 

 (Brackets and ellipses in original.)
 

 In addition to this statement, Braswell "provided [Officer] Medina [with] records, documents and electronically stored information proving that he invested his and the Greenes' funds in legitimate financial institutions." Nevertheless, Officer Medina instituted criminal proceedings against Braswell, which ultimately resulted in a grand jury indicting him on 5 April 2010 on the charge of obtaining property by false pretenses in excess of $100,000.
 

 Specifically, the indictment alleged that Braswell "unlawfully, willfully and feloniously did knowingly and designedly with the intent to cheat and defraud, obtain $112,500.00 in U.S. Currency from William Irvin Green [sic] and Ola Beth Green [sic], by means of a false pretense which was calculated to deceive and did deceive"-the false pretense being that the "property was obtained by [Braswell] guaranteeing a six percent return on all invested monies from William Irvin Green [sic] and Ola Beth Green [sic],
 
 when in fact [Braswell] did not invest the monies into legitimate financial institutions
 
 ." (Emphasis added.)
 

 *221
 
 Braswell was held in pre-trial detention until his trial on 6 February 2012. He was convicted and sentenced to 58 to 79 months imprisonment. On appeal, this Court vacated his conviction, explaining as follows:
 

 [T]he "false pretense" or "false representation" which [Braswell] allegedly made to the Greenes consisted of a statement that [Braswell] was borrowing money from the Greenes for investment-related purposes despite the fact that he did not actually intend to invest the money that he received from them in any "legitimate financial institution." A careful review of the record developed at trial reveals the complete absence of any support for this allegation.
 

 State v. Braswell
 
 ,
 
 225 N.C. App. 734
 
 , 741,
 
 738 S.E.2d 229
 
 , 234 (2013).
 

 We noted that the State did not present any records seized from the search of Braswell's home showing that he had failed to invest the Greenes' money in legitimate financial institutions and observed that "the fact that [Braswell]'s account with Fidelity Investments contained $100,000 in early 2008 suggests that he did, in fact, make investments with such institutions."
 

 Id.
 

 Moreover, we explained, "the State offered no direct or circumstantial evidence tending to show that, instead of investing the money he borrowed from the Greenes, [Braswell] converted it to his own use."
 
 Id.
 
 at 742,
 
 738 S.E.2d at 234
 
 .
 

 On 24 March 2016, Braswell filed a civil lawsuit in Nash County Superior Court from which the present appeal arises. In his complaint, Braswell alleged, in pertinent part, that
 

 [o]n 5 April 2010, Defendants Medina, Denton, and ... Whitley[ ] fabricated probable cause to mislead a Nash County grand jury into returning a bill of indictment charging [Braswell] with felony obtaining property by false pretenses. At the time they caused the indictment to issue, Medina, Denton, and Whitley knew they did not have probable cause to believe [Braswell] committed that or any other crime.
 

 *503
 
 Braswell alleged federal claims under
 
 42 U.S.C. § 1983
 
 against Officers Medina, Denton, and Whitley (collectively the "Officers") in their individual capacities.
 
 [2]
 
 Additionally, Braswell asserted state law
 
 *222
 
 claims against the Rocky Mount Defendants for malicious prosecution, obstruction of justice, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Finally, his complaint contained claims against the City and the State of North Carolina for violations of the North Carolina Constitution.
 

 On 6 April 2016, the State filed a motion to dismiss pursuant to Rules 12(b)(1) and (6). The Rocky Mount Defendants filed a motion to dismiss on 15 April 2016 seeking dismissal of all of Braswell's claims against them pursuant to Rule 12(b)(6). Following a hearing before the Honorable Allen Baddour on 5 August 2016, the trial court issued an order on 24 August 2016 dismissing this entire action pursuant to Rule 12(b)(6). Braswell filed a timely notice of appeal.
 
 [3]
 

 Analysis
 

 As an initial matter, we conclude that Braswell has abandoned any challenges to the trial court's dismissal of his claims against the Rocky Mount Defendants for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress because he failed to address the dismissal of these claims in his principal brief on appeal.
 
 See
 
 N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").
 
 [4]
 

 Accordingly, we consider only whether the trial court erred in dismissing Braswell's § 1983 claims; state law claims for malicious prosecution and obstruction of justice; and claim under the North Carolina Constitution.
 

 The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory
 
 *223
 
 when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings
 
 de novo
 
 to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
 

 Feltman
 
 ,
 
 238 N.C. App. at 251
 
 ,
 
 767 S.E.2d at 619
 
 (citation omitted).
 

 "Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."
 
 Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.
 
 ,
 
 231 N.C. App. 70
 
 , 74,
 
 752 S.E.2d 661
 
 , 663 (2013) (citation omitted).
 

 I. Claims Under
 
 42 U.S.C. § 1983
 

 Section 1983 provides a private right of action against any person who, acting under color of state law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution...."
 
 42 U.S.C. § 1983
 
 . "A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort" of malicious prosecution.
 

 *504
 

 Evans v. Chalmers
 
 ,
 
 703 F.3d 636
 
 , 647 (4th Cir. 2012) (citation and quotation marks omitted). In order to state a § 1983 claim premised upon a malicious prosecution theory, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor."
 

 Id.
 

 It is undisputed that Braswell has pled facts in his complaint establishing that he was seized pursuant to legal process and that the criminal proceedings terminated in his favor. The Officers argue, however, that Braswell failed to state valid claims under § 1983 because (1) probable cause existed to support his arrest; and (2) the actions of the prosecutor and the grand jury in seeking and issuing the indictment constituted a break in the causal chain such that the Officers cannot be deemed to have
 
 caused
 
 an illegal seizure. We address each argument in turn.
 

 A. Probable Cause
 

 "Probable cause exists when the information known to the officer is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."
 

 *224
 

 State v. Dickens
 
 ,
 
 346 N.C. 26
 
 , 36,
 
 484 S.E.2d 553
 
 , 558 (1997) (citation and quotation marks omitted). Here, Braswell has sufficiently alleged in his complaint that the Officers lacked probable cause to believe he had committed the crime of obtaining property by false pretenses. As reflected in the indictment, the theory of criminal liability was that Braswell obtained $112,500 from the Greenes "by means of a false pretense which was calculated to deceive and did deceive" and that the false pretense was that he would provide the Greenes with "a six percent return on all invested monies ... when in fact [Braswell] did not invest the monies into legitimate financial institutions."
 

 In our decision vacating Braswell's conviction, we held that "[a] careful review of the record developed at trial reveals the
 
 complete absence of any support
 
 for this allegation."
 
 Braswell
 
 ,
 
 225 N.C. App. at 741
 
 ,
 
 738 S.E.2d at 234
 
 (emphasis added). Moreover, all that matters for purposes of applying the Rule 12(b)(6) standard is that Braswell has
 
 alleged
 
 sufficient facts showing the absence of probable cause. Specifically, he asserted the following in his complaint:
 

 49. On 5 April 2010, Defendants Medina, Denton, and upon information and belief, Defendant Whitley, fabricated probable cause to mislead a Nash County grand jury into returning a bill of indictment charging [Braswell] with felony obtaining property by false pretenses. At the time they caused the indictment to issue, Medina, Denton, and Whitley knew they did not have probable cause to believe [Braswell] committed that or any other crime.
 

 In addition, the complaint alleged that
 

 [t]o conceal the absence of evidence of [Braswell]'s alleged false pretense or fraudulent intent, Officer Medina fabricated probable cause-by manufacturing false inculpatory evidence and concealing exculpatory evidence in order to mislead judicial officials into authorizing the arrest and pretrial detention of [Braswell], to mislead prosecutors to authorize a felony indictment for obtaining property in excess of $100,000 by false pretenses, to mislead the grand jury into issuing said indictment, and to mislead prosecutors into maintaining felony criminal proceedings against [Braswell] and ultimately convicting him.
 

 As demonstrated by these and other allegations in Braswell's complaint, the crux of his § 1983 claims is that evidence possessed by the Officers-including records seized from Braswell's home-actually
 
 *225
 
 exculpated rather than inculpated Braswell by showing that he had, in fact, invested large sums of money into legitimate financial institutions. In light of these allegations, we are satisfied that Braswell's complaint adequately alleged a lack of probable cause for his arrest and prosecution on the charge of obtaining property by false pretenses.
 
 See, e.g.
 
 ,
 
 Simpson v. Sears, Roebuck & Co
 
 .,
 
 231 N.C. App. 412
 
 , 417,
 
 752 S.E.2d 508
 
 , 510 (2013) (reversing trial court's dismissal of plaintiff's malicious prosecution claim because her "allegations, which we are required to treat as true, [were] sufficient to withstand a motion to dismiss.");
 
 Enoch v. Inman
 
 ,
 
 164 N.C. App. 415
 
 , 419,
 
 596 S.E.2d 361
 
 , 364 (2004) (reversing trial court's granting of motion to dismiss because the "allegations, including the factual
 
 *505
 
 details summarized above, [were] sufficient to support a § 1983 claim....").
 
 [5]
 

 B. Causation
 

 The Officers next argue that Braswell failed to plead facts sufficient to satisfy the causation prong of a § 1983 claim grounded in a theory of malicious prosecution. They contend that the intervening decision by the district attorney to submit a bill of indictment to the grand jury and the grand jury's decision to issue an indictment insulate the Officers from liability by interrupting the causal chain.
 

 It is true that "acts of independent decision-makers (
 
 e.g.
 
 , prosecutors, grand juries, and judges)
 
 may
 
 constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure."
 
 Evans
 
 ,
 
 703 F.3d at 647
 
 (emphasis added). However, it is well established that even once the prosecutor has submitted a bill of indictment to a grand jury and the grand jury has indicted the defendant, "police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances."
 

 Id.
 

 *226
 
 The intervening acts of a grand jury have never been enough to defeat an otherwise viable malicious prosecution claim, whether or not the grand jury votes a true bill or even returns an indictment ultimately determined to be deficient as a matter of law. And though an indictment by a grand jury is generally considered
 
 prima facie
 
 evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that the defendant
 
 misrepresented, withheld, or falsified evidence
 
 .
 

 ....
 

 As with the grand jury, ... the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.
 

 White v. Frank
 
 ,
 
 855 F.2d 956
 
 , 961-62 (2d Cir. 1988) (internal citation and quotation marks omitted and emphasis added);
 
 see also
 

 Evans
 
 ,
 
 703 F.3d at 647-48
 
 ("[O]fficers may be liable when they have lied to or misled the prosecutor; failed to disclose exculpatory evidence to the prosecutor; or unduly pressured the prosecutor to seek the indictment[.]" (internal citations and quotation marks omitted));
 
 Hand v. Gary
 
 ,
 
 838 F.2d 1420
 
 , 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.");
 
 Jones v. City of Chicago
 
 ,
 
 856 F.2d 985
 
 , 994 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial-none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.").
 

 Accordingly, in cases where law enforcement officers conceal or fabricate evidence in order to falsely show that probable cause exists to prosecute a criminal defendant, the intervening decision of the prosecutor or grand jury will not immunize the officers from liability on a malicious prosecution claim under § 1983. As shown above, Braswell's complaint in the present case sufficiently pled facts in support of such a theory.
 
 [6]
 

 *227
 

 *506
 

 C. Qualified Immunity
 

 We also reject the Officers' assertion that dismissal of Braswell's § 1983 claims was appropriate pursuant to the qualified immunity doctrine. "The defense of qualified immunity shields government officials from personal liability under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."
 
 Toomer v. Garrett
 
 ,
 
 155 N.C. App. 462
 
 , 473,
 
 574 S.E.2d 76
 
 , 86 (2002) (citation and quotation marks omitted).
 

 Braswell's right to be free from a seizure and prosecution lacking in probable cause and based upon the deliberate concealment or fabrication of evidence was clearly established at the time of Braswell's arrest, and a reasonable officer would have been aware of that right.
 
 See
 

 Webb v. United States
 
 ,
 
 789 F.3d 647
 
 , 667 (6th Cir. 2015) ("It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury. A reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." (internal citation, quotation marks, and brackets omitted));
 
 Wilkins v. DeReyes
 
 ,
 
 528 F.3d 790
 
 , 805 (10th Cir. 2008) ("[I]t of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment's proscription against unreasonable searches and seizures.").
 

 The cases that the Officers rely upon in their brief on this issue are clearly inapposite as they involve determinations made at the
 
 summary judgment
 
 stage that there was, in fact, probable cause to seize the plaintiffs.
 
 See, e.g.
 
 ,
 
 Durham v. Horner
 
 ,
 
 690 F.3d 183
 
 , 189 (4th Cir. 2012)
 

 *228
 
 (explaining that "the prosecution was plainly supported by probable cause" and plaintiff failed to "put forward any evidence to show that [the defendant officer] acted maliciously or conspired ... to mislead the grand jury");
 
 Porterfield v. Lott
 
 ,
 
 156 F.3d 563
 
 , 570 (4th Cir. 1998) ("Since there were sufficient indicia of probable cause to arrest [the plaintiff], as we have indicated already, it follows that there were sufficient indicia of probable cause to seek a warrant.").
 

 Here, conversely, the facts alleged in the complaint-which we are required to accept as true in this appeal-were that the Officers fabricated and concealed evidence in order to bring about Braswell's indictment despite the absence of probable cause to believe he was guilty of the crime for which he was charged. Thus, the Officers are not entitled to qualified immunity at this stage of the litigation.
 

 * * *
 

 For these reasons, we conclude that Braswell has stated valid claims under
 
 42 U.S.C. § 1983
 
 . The trial court's dismissal of these claims therefore constituted error.
 

 II. State Law Claims
 

 A. Malicious Prosecution
 

 In order to state a common law claim for malicious prosecution under North Carolina law,
 

 the plaintiff must demonstrate that the defendant (1) instituted, procured or participated in the criminal proceeding against the plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of the plaintiff.
 

 *507
 

 Moore v. Evans
 
 ,
 
 124 N.C. App. 35
 
 , 42,
 
 476 S.E.2d 415
 
 , 421 (1996) (citation, quotation marks, and brackets omitted). "[A] grand jury's action in returning an indictment is only prima facie evidence of probable cause and ... as a result, the return of an indictment does not as a matter of law bar a later claim for malicious prosecution."
 
 Turner v. Thomas
 
 ,
 
 369 N.C. 419
 
 , 445,
 
 794 S.E.2d 439
 
 , 445 (2016).
 

 As shown above, Braswell's complaint alleged facts showing that (1) the Officers initiated or participated in the criminal proceeding against him; (2) they lacked probable cause to believe he committed the offense of obtaining property by false pretenses; (3) they acted with malice; and (4) the prosecution was terminated in Braswell's favor. " 'Malice' in a malicious prosecution claim may be shown by offering evidence that
 
 *229
 
 defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights."
 
 Lopp v. Anderson
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 770
 
 , 780 (2016) (citation and quotation marks omitted). Moreover, "[m]alice can be inferred from the want of probable cause alone."
 

 Id.
 

 at ----,
 
 795 S.E.2d at 779
 
 (citation and quotation marks omitted).
 

 Here, Braswell has adequately alleged malice by pleading facts showing that the Officers not only lacked probable cause to believe he was guilty of the crime for which he was ultimately charged but also concealed and fabricated evidence in order to cause him to be prosecuted for that offense. Accordingly, Braswell has properly stated claims for malicious prosecution against the Rocky Mount Defendants under North Carolina law, and the trial court erred in dismissing these claims.
 
 See
 

 Chidnese v. Chidnese
 
 ,
 
 210 N.C. App. 299
 
 , 310,
 
 708 S.E.2d 725
 
 , 734 (2011) ("Treating these allegations as true, these facts can be construed to state that [the defendant] procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution." (citation omitted)).
 

 B. Obstruction of Justice
 

 Braswell next argues that the trial court improperly dismissed his claims for obstruction of justice. We disagree.
 

 North Carolina's appellate courts have recognized that "[a]t common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice."
 
 In re Kivett
 
 ,
 
 309 N.C. 635
 
 , 670,
 
 309 S.E.2d 442
 
 , 462 (1983). This articulation of common law obstruction of justice first appeared in North Carolina caselaw in our Supreme Court's
 
 Kivett
 
 decision. In that case, which concerned an appeal from a judicial discipline proceeding, the Court held that the respondent judge's attempt to prevent a grand jury from convening in order to investigate suspected criminal conduct on his part "would support a charge of common law obstruction of justice."
 

 Id.
 

 North Carolina is one of a small minority of jurisdictions that also recognizes a
 
 civil
 
 cause of action for obstruction of justice. This tort was first recognized by our Supreme Court in
 
 Henry v. Deen
 
 ,
 
 310 N.C. 75
 
 ,
 
 310 S.E.2d 326
 
 (1984), a wrongful death action brought by the administrator of the decedent's estate alleging that his medical providers had negligently rendered care to him. The plaintiff also asserted that the defendants had created false entries in the decedent's medical chart and concealed his genuine medical records.
 
 Id.
 
 at 87,
 
 310 S.E.2d at 334
 
 .
 

 *230
 
 These actions, the plaintiff argued, rendered the defendants liable for civil conspiracy because their actions were intended "to prevent the plaintiff from discovering the negligent acts of the defendants...."
 
 Id.
 
 at 79,
 
 310 S.E.2d at 329-30
 
 .
 

 On appeal from the trial court's dismissal of the plaintiff's civil conspiracy claim, the Supreme Court held that the plaintiff had properly alleged a claim for civil conspiracy based upon the underlying wrongful act of obstruction of justice.
 
 [7]
 

 *508
 

 Id.
 
 at 87,
 
 310 S.E.2d at 334
 
 . The Court explained that the defendants' alleged concealment and fabrication of evidence, "if found to have occurred, would be acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice."
 

 Id.
 

 Our decision in
 
 Grant v. High Point Regional Health System
 
 ,
 
 184 N.C. App. 250
 
 ,
 
 645 S.E.2d 851
 
 (2007), applied
 
 Henry
 
 in a similar context. In that case, the executrix of the decedent's estate alleged that the defendant hospital was liable for obstruction of justice for destroying the decedent's medical records because that action "effectively precluded [the plaintiff] from obtaining the required Rule 9(j) certification.... and thus effectively precluded [the plaintiff] from being able to successfully prosecute a medical malpractice action against [the defendant]."
 
 Id.
 
 at 255,
 
 645 S.E.2d at 855
 
 (quotation marks and ellipses omitted).
 

 We reversed the trial court's dismissal of this claim, holding that "such acts by [the defendant], if true, would be acts which obstruct, impede or hinder public or legal justice and would amount to the common law offense of obstructing public justice."
 
 Id.
 
 at 255,
 
 645 S.E.2d at 855
 
 (citation and quotation marks omitted). In so holding, we explicitly rejected the defendant's argument that
 
 Henry
 
 was inapplicable
 
 *231
 
 on the theory that the plaintiff's claim in
 
 Henry
 
 had been based on civil conspiracy rather than obstruction of justice. We explained that "in
 
 Henry
 
 , the wrongful acts necessary to prove conspiracy were the acts constituting obstruction of justice. Accordingly, as the acts constituting obstruction of justice underlying the civil conspiracy in
 
 Henry
 
 were similar to [the defendant's] alleged actions in the present case,
 
 Henry
 
 is persuasive."
 

 Id.
 

 (internal citation omitted).
 

 We also had occasion to consider a civil obstruction of justice claim in
 
 Broughton v. McClatchy Newspapers, Inc.
 
 ,
 
 161 N.C. App. 20
 
 ,
 
 588 S.E.2d 20
 
 (2003). The plaintiff in
 
 Broughton
 
 sued the News and Observer ("N&O") and certain N&O employees alleging,
 
 inter alia
 
 , that the defendants were liable for obstruction of justice because they had published an article about the plaintiff's ongoing divorce proceeding with her husband.
 

 Id.
 

 at 22
 
 ,
 
 588 S.E.2d at 23-24
 
 . On appeal, we affirmed the trial court's entry of summary judgment in the defendants' favor as to that claim on the ground that the plaintiff "presented no evidence that her [divorce case] was in some way judicially prevented, obstructed, impeded or hindered by the acts of defendants. There is no evidence as to the disposition of that action or any showing that the newspaper articles adversely impacted that case."
 

 Id.
 

 at 33
 
 ,
 
 588 S.E.2d at 30
 
 .
 

 Burgess v. Busby
 
 ,
 
 142 N.C. App. 393
 
 ,
 
 544 S.E.2d 4
 
 (2001), involved an underlying medical malpractice lawsuit against two physicians in which the jury found one of them liable. After that trial had concluded, the other physician sent a letter to all of the doctors at the hospital where he worked in which he provided the names and addresses of the jurors who had-as the letter stated-"found a doctor guilty."
 
 Id
 
 . at 397,
 
 544 S.E.2d at 6
 
 . Several of those jurors proceeded to file a lawsuit of their own alleging that the doctor's act of sending the letter constituted obstruction of justice.
 
 Id.
 
 at 398,
 
 544 S.E.2d at 6
 
 .
 

 We reversed the trial court's dismissal of this claim, explaining that the plaintiffs' "complaint sufficiently alleges a cause of action for common law obstruction of justice in that it alleges (1) defendant alerted health care providers to the names of the jurors in retaliation for their verdict; (2) this retaliation was designed to harass plaintiffs; and (3) defendant's conduct was meant to obstruct the administration of justice in Rowan County."
 
 Id.
 
 at 409,
 
 544 S.E.2d at 13
 
 .
 

 *509
 
 Our decision in
 
 Blackburn v. Carbone
 
 ,
 
 208 N.C. App. 519
 
 ,
 
 703 S.E.2d 788
 
 (2010), is particularly instructive in analyzing the scope of the obstruction of justice tort in North Carolina. In that case, the plaintiff alleged that the defendant physician was liable for obstruction of justice
 
 *232
 
 on the ground that he had prepared an inaccurate medical report-which he subsequently failed to correct-for use in a lawsuit that the plaintiff had brought against a third party relating to an automobile accident.
 
 Id.
 
 at 520,
 
 703 S.E.2d at 790
 
 . The plaintiff claimed that the physician's act had forced him to settle the lawsuit for an amount considerably less than the actual damages he had incurred.
 
 Id.
 
 at 520,
 
 703 S.E.2d at 791
 
 . The trial court entered summary judgment against the plaintiff and dismissed his obstruction of justice claim.
 
 Id.
 
 at 521,
 
 703 S.E.2d at 791
 
 .
 

 On appeal, we summarized the caselaw from our appellate courts recognizing a civil claim for obstruction of justice as follows:
 

 In
 
 Henry
 
 and
 
 Grant
 
 , allegations that the defendants had destroyed certain medical records and created other false medical records for the purpose of defeating a medical negligence claim were held to be sufficient to state a claim for common law obstruction of justice.
 
 Henry
 
 ,
 
 310 N.C. at 88
 
 ,
 
 310 S.E.2d at 334-35
 
 (stating that, "where, as alleged here, a party deliberately destroys, alters or creates a false document to subvert an adverse party's investigation of his right to seek a legal remedy, and injuries are pleaded and proven, a claim for the resulting increased costs of the investigation will lie");
 
 Grant
 
 ,
 
 184 N.C. App. at 255-56
 
 ,
 
 645 S.E.2d at 855
 
 (stating that allegations that "Defendant destroyed the medical records of the decedent" so as to "effectively preclude Plaintiff from obtaining the required Rule 9(j) certification" and prevent " 'Plaintiff from being able to successfully prosecute a medical malpractice action against ... Defendant ... and others' " "stated a cause of action for common law obstruction of justice"). Similarly, this Court has held that "Plaintiff's complaint sufficiently alleged a cause of action for common law obstruction of justice in that it alleges (1) defendant alerted health care providers to the names of the jurors who returned a verdict against another health care provider in a medical negligence case in retaliation for their verdict; (2) this retaliation was designed to harass plaintiffs; and (3) defendant's conduct was meant to obstruct the administration of justice."
 
 Burgess
 
 ,
 
 142 N.C. App. at 409
 
 ,
 
 544 S.E.2d at 13
 
 . As a result, any action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability
 
 *233
 

 to seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice
 
 .
 

 Id.
 
 at 526-27,
 
 703 S.E.2d at 795
 
 (brackets omitted and emphasis added).
 
 [8]
 

 In the present case, the Rocky Mount Defendants contend that no "court in North Carolina ha[s] ever recognized a common-law obstruction of justice civil claim based on a police officer's actions in a criminal proceeding." In his attempt to show the viability of such a claim, Braswell relies primarily upon our decision in
 
 Jones v.
 

 City of Durham
 
 ,
 
 183 N.C. App. 57
 
 ,
 
 643 S.E.2d 631
 
 (2007). However,
 
 Jones
 
 is readily distinguishable from the present case.
 

 In
 
 Jones
 
 , the plaintiff bought a lawsuit against a police officer alleging that he had negligently struck her with his car while responding to an unrelated call for assistance from another officer.
 
 Jones v. City of Durham
 
 ,
 
 168 N.C. App. 433
 
 , 435,
 
 608 S.E.2d 387
 
 , 389,
 
 aff'd
 
 ,
 
 360 N.C. 81
 
 ,
 
 622 S.E.2d 596
 
 (2005),
 
 opinion withdrawn and superseded on reh'g and decision rescinded in part based upon dissenting opinion
 
 ,
 
 361 N.C. 144
 
 ,
 
 638 S.E.2d 202
 
 (2006). Among the causes of action contained in her suit against the officer was a claim for obstruction of justice based upon the officer's alleged destruction of dashboard camera footage of the accident. The trial court granted partial summary judgment for the officer but did not dismiss the obstruction
 
 *510
 
 of justice claim.
 
 Id.
 
 at 434,
 
 608 S.E.2d at 388
 
 .
 

 In the plaintiff's initial appeal to this Court, we determined that all of the plaintiff's claims should be dismissed.
 

 Id.
 

 at 443
 
 ,
 
 608 S.E.2d at 392
 
 . However, the Supreme Court reversed our decision, and upon remand to this Court, we affirmed the trial court's denial of the defendant's motion to dismiss the obstruction of justice claim, explaining that "the evidence would allow a jury to conclude that a camera in [the defendant's] police car had made a videotape recording of the accident, and that the videotape was subsequently misplaced or destroyed."
 
 Jones
 
 ,
 
 183 N.C. App. at 59
 
 ,
 
 643 S.E.2d at 633
 
 .
 

 Jones
 
 is distinguishable from the present case in that it involved allegations that the defendant officer had obstructed justice by destroying evidence related to a
 
 civil
 
 negligence claim that the plaintiff
 
 *234
 
 had asserted against him.
 

 Id.
 

 Accordingly,
 
 Jones
 
 fits squarely within the line of cases discussed above that allow a plaintiff to sue under an obstruction of justice theory when the defendant has improperly obstructed, impeded, or hindered a "plaintiff's ability to seek and obtain a legal remedy[.]"
 
 Blackburn
 
 ,
 
 208 N.C. App. at 527
 
 ,
 
 703 S.E.2d at 795
 
 .
 

 Here, conversely, Braswell seeks to hold the Officers civilly liable on an obstruction of justice theory
 
 not
 
 for their obstruction of his ability to obtain a legal remedy but rather solely for their actions taken in the course of his criminal prosecution. While torts such as malicious prosecution and false arrest allow law enforcement officers to be held liable for their wrongful acts while conducting a criminal investigation, neither this Court nor our Supreme Court has ever enlarged the scope of the obstruction of justice tort so as to encompass claims based on acts occurring solely in the course of an officer's criminal investigation that are unrelated to a plaintiff's ability to seek and obtain a legal remedy. On these facts, we conclude that the trial court properly dismissed Braswell's obstruction of justice claims.
 

 C. Claim Under North Carolina Constitution
 

 Finally, Braswell argues that the trial court erred in dismissing his claim against the City alleging that his rights under the North Carolina Constitution were violated by his arrest and prosecution. Our Supreme Court has explained that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution."
 
 Corum v. University of North Carolina
 
 ,
 
 330 N.C. 761
 
 , 782,
 
 413 S.E.2d 276
 
 , 289 (1992). "[A]n adequate remedy must provide the possibility of relief under the circumstances."
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 340,
 
 678 S.E.2d 351
 
 , 355 (2009).
 

 The City argues that the dismissal of Braswell's state constitutional claim was proper because Braswell "made no allegation [for which] he does not have an adequate state remedy." This Court has held that where a defendant has raised immunity defenses that have not yet been adjudicated-thus creating uncertainty regarding whether a plaintiff will, in fact, have an adequate state remedy-dismissal of the plaintiff's state constitutional claim at the pleadings stage is premature.
 

 In
 
 Bigelow v. Town of Chapel Hill
 
 ,
 
 227 N.C. App. 1
 
 ,
 
 745 S.E.2d 316
 
 (2013), we addressed this issue as follows:
 

 As long as Defendants' sovereign immunity defense remains potentially viable for any or all of Plaintiffs'
 

 *235
 
 wrongful discharge-related claims, ... Plaintiffs' associated North Carolina constitutional claims are not supplanted by those claims. This holding does not predetermine the likelihood that plaintiff will win other pretrial motions, defeat affirmative defenses, or ultimately succeed on the merits of his case. Rather, it simply ensures that an adequate remedy must provide the possibility of relief under the circumstances.
 

 Id.
 
 at 15,
 
 745 S.E.2d at 326
 
 (citation and quotation marks omitted).
 

 Here, in the third affirmative defense contained in its answer, the City has asserted governmental immunity as a bar to Braswell's
 
 *511
 
 tort claims. The merits of this immunity defense have not yet been resolved. If it is ultimately determined that governmental immunity
 
 does
 
 shield the City from all of these claims, then Braswell would not possess an adequate remedy under state law apart from his claim under the North Carolina Constitution.
 
 See, e.g.
 
 ,
 
 Craig
 
 ,
 
 363 N.C. at 340
 
 ,
 
 678 S.E.2d at 355
 
 ("Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim.").
 

 Therefore, because it is not yet clear at this stage of the litigation whether Braswell will have an adequate state law remedy, the dismissal of his state constitutional claim against the City was premature. Accordingly, we reverse the trial court's dismissal of that claim.
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's dismissal of Braswell's claims for obstruction of justice, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress as well as his claim against the State under the North Carolina Constitution. We reverse the trial court's dismissal of his § 1983 claims, common law malicious prosecution claims, and claim against the City under the North Carolina Constitution. We remand for further proceedings not inconsistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 Judges HUNTER, JR. and MURPHY concur.
 

 [1]
 

 At some point, the interest rate on the loans was reduced to 6%.
 

 [2]
 

 Although Braswell's complaint focuses heavily on the actions of Officer Medina, it also includes allegations against Officers Denton and Whitley in connection with their alleged participation in the fabrication and concealment of evidence that led to Braswell's prosecution. Moreover, the Rocky Mount Defendants' arguments on appeal do not differentiate between the three officers. We therefore utilize this same approach in our legal analysis of Braswell's claims.
 

 [3]
 

 Braswell has not appealed from the portion of the trial court's order dismissing his claim against the State of North Carolina.
 

 [4]
 

 While Braswell's reply brief does contain arguments relating to his intentional infliction of emotional distress and negligence claims, this Court has made clear that "under Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, where a party fails to assert a claim in its principal brief, it abandons that issue and cannot revive the issue via reply brief."
 
 Larsen v. Black Diamond French Truffles, Inc.
 
 ,
 
 241 N.C. App. 74
 
 , 79,
 
 772 S.E.2d 93
 
 , 96 (2015).
 

 [5]
 

 We likewise reject the Officers' argument that the dismissal of Braswell's claims was proper on the theory that Braswell invested the Greenes' funds "without a dealer's license" in violation of N.C. Gen. Stat. § 78A-36. Section 78A-36 makes it "unlawful for any person to transact business in this State as a dealer or salesman unless he is registered under this Chapter." N.C. Gen. Stat. § 78A-36(a) (2015). N.C. Gen. Stat. § 78A-2 defines "dealer" as "any person engaged in the business of effecting transactions in securities for the account of others or for his own account." N.C. Gen. Stat. § 78A-2(2) (2015). However, Braswell was not charged with violating N.C. Gen. Stat. § 78A-36. The issue of whether Braswell failed to invest the Greenes' money in legitimate financial institutions-which was the theory upon which the indictment was based-is separate and distinct from the issue of whether Braswell was in compliance with N.C. Gen. Stat. § 78A-36.
 

 [6]
 

 We are not persuaded by the Officers' reliance on
 
 Massey v. Ojaniit
 
 ,
 
 759 F.3d 343
 
 (4th Cir. 2014), in support of their argument that Braswell failed to allege sufficient details so as to establish causation. In
 
 Massey
 
 , the plaintiff alleged that the defendant police officers fabricated information that led to the plaintiff's illegal arrest, prosecution, and conviction.
 

 Id.
 

 at 347
 
 . The Fourth Circuit found the plaintiff's allegations of causation to be lacking, however, because the record showed that probable cause existed to arrest the plaintiff even
 
 after
 
 the piece of fabricated evidence was excluded from consideration.
 
 See
 

 id.
 

 at 357
 
 (explaining that "[t]hough [the plaintiff] alleges that [the officers] deliberately supplied fabricated evidence, he has not pleaded facts adequate to undercut the grand jury's probable cause determination. That is, ... even removing the fabricated statement ..., there still existed sufficient probable cause to arrest [the plaintiff]." (quotation marks and brackets omitted)). In the present case, conversely, Braswell's complaint alleged facts showing that his prosecution was a
 
 direct result
 
 of the fabrication and concealment of evidence by the Officers. Therefore,
 
 Massey
 
 is distinguishable on its face.
 

 [7]
 

 The Court explained that a civil conspiracy cause of action must be predicated upon an underlying tort:
 

 In civil actions for recovery for injury caused by acts committed pursuant to a conspiracy, this Court has stated that the combination or conspiracy charged does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all. The gravamen of the action is the resultant injury, and not the conspiracy itself. To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective.
 

 Henry
 
 ,
 
 310 N.C. at 86-87
 
 ,
 
 310 S.E.2d at 334
 
 (internal citations omitted).
 

 [8]
 

 We ultimately affirmed the dismissal of the plaintiff's obstruction of justice claim in
 
 Blackburn
 
 because, among other reasons, he had failed to show that the defendant acted intentionally and "for the purpose of deliberately obstructing, impeding or hindering the prosecution of [the plaintiff's] automobile accident case."
 
 Blackburn
 
 ,
 
 208 N.C. App. at 529
 
 ,
 
 703 S.E.2d at 796
 
 .